UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO: 8:25-cr-530-CEH-LSG

HON NING HO

_____/

## O R D E R

This matter comes before the Court on Defendant Hon Ning Ho's Motion for District Court Review of the Magistrate Judge's Detention Order and Request for Pretrial Release (Doc. 42), filed on December 8, 2025. In the motion, Defendant requests this Court reverse the magistrate judge's order of detention and release Defendant pending trial with conditions. The Government filed a response in opposition (Doc. 61), and Defendant filed a Notice providing medical records, character letters, and certificates of achievement in support of his motion (Doc. 63). A hearing on the motion was held December 18, 2025. The Court, having considered the motion, response, argument of counsel, and upon a de novo review of the record, will adopt the Magistrate Judge's Order of detention (Doc. 25) and deny Defendant's Motion for District Court Review of the Magistrate Judge's Detention Order and Request for Pretrial Release (Doc. 42).

## I.    BACKGROUND

Defendant Hon Ning Ho ("Defendant" or "Ho") and three co-defendants were charged in an eighteen-count indictment alleging Conspiracy to Violate Export

Control Reform Act of 2018, in violation of 50 U.S.C. § 4819 (Count 1); violation of the Export Control Reform Act of 2018, 50 U.S.C. § 4819 (Counts 2-5); smuggling goods from the United States in violation of 18 U.S.C. § 554 (Counts 6-8); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 9); and money laundering in violation of 18 U.S.C. § 1956(a)(2) (Counts 10-18). In sum, the Indictment charges Ho with using Janford Realtor LLC, a limited liability company for which Ho was the registered agent and manager, as a front to illegally export to the People's Republic of China ("China"), either directly or through intermediary countries, advanced and U.S.-origin Graphics Processing Units ("GPUs") with artificial intelligence ("AI") and supercomputing applications. These U.S. technology products are highly controlled, are listed on the Commerce Control List ("CCL"), and have strict export restrictions and licensing requirements. Defendants are charged with, beginning around September 2023, exporting and conspiring to export from the U.S. to China prohibited items listed on the CCL.

**A. Detention Hearing (Doc. 64) and Magistrate Judge's Detention Order (Doc. 25)**

Ho was arrested on November 19, 2025, and appeared before the magistrate judge on the same date for an initial appearance, arraignment, and detention hearing. Docs. 22, 34. At the hearing, the United States took the position that Ho should be

detained.[1] The Government argued that the offenses charged are extremely serious and pose national security risks. The AI capabilities of the GPUs are highly sophisticated and can be used for facial recognition, automatic weapons, to distribute fake news and disinformation campaigns. The Government represented that Ho took active steps to conceal his illegal activity, including creating a fake realty company as a front to facilitate the illegal export of GPUs to China through intermediary countries like Thailand and Malaysia knowing the products would ultimately end up in China. He received more than $3.8 million wired directly from China. His co-conspirator boasted his father's involvement in similar conduct. The Government argued the weight of the evidence against Ho is overwhelming, including text messages, emails, shipping forms, and bank records. Defendants' own text messages admitted they knew what they were doing, that there was a licensing requirement, that the items were prohibited from being sent to China, and that they created a plan to get around the export restrictions.

The Government argued that Ho had a high incentive to flee because he is facing significant criminal penalties if found guilty. Ho's parents live in China, and if he fled there, the U.S. would be unable to extradite him. The Government also argued Ho has a British passport that he failed to disclose. Additionally, Ho has had

---

[1] Co-defendant Chen appeared before the magistrate judge on the same date. The Government also argued Chen should be detained.

significant overseas travel including Aruba, Grand Caymans, and Hong Kong. The Government argued that other than his wife, Ho has few friends or family in this district.

In response, defense counsel argued that Ho is an American citizen who is presumed innocent until proven otherwise. He contended that there are restrictions that can be imposed, short of detention, that would ensure he shows up in court, including taking his passports. Ho argued that he has been in the area for 16 years and in his own home for ten years. He is married and has no criminal record other than minor traffic infractions. Defense counsel argued that if Ho was going to leave, he would have done so already. He submits that pretrial services got it right and Ho should be released under the strict conditions they proposed. After considering the arguments and information presented at the hearing, the Magistrate Judge determined that Ho should remain detained until trial. Doc. 64 at 26.

On November 20, 2025, Magistrate Judge Sansone entered a written order of detention memorializing her oral ruling from the hearing held on November 19, 2025. Doc. 25. Two of the concerns, among others, that the magistrate had were Defendant's failure to report possession of a British passport and Defendant's prior failure to appear for a hearing on a charge of driving with no vehicle registration. Specifically, the magistrate judge found that Ho was a flight risk and that the Government established by a preponderance of the evidence that no condition or combination of conditions

would assure the Defendant's appearance.[2] *Id.* at 1, 3. The magistrate judge's detention order concluded the following reasons supported detention: (1) the weight of the evidence against Defendant is strong; (2) Ho is subject to a lengthy incarceration if convicted; (3) Ho has significant family or other ties outside the U.S.; (4) he has a lack of stable employment; and (5) his prior failure to appear in court as ordered. *Id.* at 3. The magistrate judge also found the following additional reasons supported detention: extremely serious allegations of sending powerful computers to China with national security implications; over $3.8 million wired directly from China to Defendant; if Defendant flees to China, the U.S. could not extradite; and Defendant failed to disclose he had a British passport that agents found only after searching his house. *Id.* at 4.

### B. Pretrial Services Report (Doc. 36)

Defendant was born in Hong Kong on October 24, 1991. He is 34 years old. He moved to Miami at the age of 14 and lived there three years before moving to Orlando for one year. He then moved to Tampa and has been in Tampa ever since. Ho told pretrial services about his U.S. passport.[3] He has had prior international travel for

---

[2] Additionally, at the detention hearing, the magistrate judge indicated the Government had met its burden by clear and convincing evidence that no condition or a combination of conditions of release will reasonably assure the safety of any other person in the community.
[3] He failed to mention his British passport.

5

education and leisure to Japan, Korea, Europe, Aruba, Cayman Islands, and Taiwan. He has lived at the same Tampa home, owned by his parents who live in Hong Kong, for ten years with his brother and his wife of five or six years. Defendant is a U.S. citizen. Pretrial Services tried to contact Defendant's wife to verify information, but she did not return the call.

Defendant advised Pretrial Services that he has been unemployed for the last seven months. He had past work as an interpreter and a waiter. His wife provides financial support as he seeks employment.

Pretrial Services identified the following factors regarding their assessment of his nonappearance: unverified personal history information; possession of a passport; history of international travel; lack of financial ties to the community; lack of employment; lack of candor relating to physical health; prior failure to appear. Regarding their assessment of danger, Pretrial Services identified no known factors indicating Defendant poses a risk of danger to the community.

Pretrial Services recommended Defendant be released on an unsecured bond with restrictive conditions, including surrender of passport, travel restricted to the Middle District of Florida, preclude applying for another passport, seek and maintain employment, and report to pretrial services as directed.

### C. Ho's Motion to Review Magistrate Judge's Detention Order (Doc. 42)

On December 8, 2025, Defendant Ho filed a motion requesting district court review, under 18 U.S.C. § 3145(b), of the magistrate judge's detention order. Doc. 42. In his motion, Ho explains that he was born in Hong Kong in October 1991 and grew up in a stable middle-class home. His family life was comfortable, not wealthy, and his parents were supportive of him and his younger brother. He came to the United States at an early age to visit family. He made the move to Miami to continue his education when he was fourteen years old, and he lived with his relatives for several years—first in Miami and then later at a boarding school in Lake Mary, Florida, where he graduated from high school. In 2012 or 2013, his younger brother joined him in the United States, and they have lived together ever since.

After high school, he attended the University of South Florida, where he earned a Bachelor of Science degree in biology and graduated in 2015. Ho states that he met his wife through a college friend. They've been together seven years and have been married since 2020. They plan to build a family. Ho considers Florida his home. He has lived here longer than in Hong Kong. He became a citizen in 2018. He is active in a Tampa church group and has been involved in church life since his college days at USF. He has a close circle of friends in Tampa. His family remains fully supportive, and his parents are willing for him to remain in the Tampa home upon release.

Additionally, his uncle and cousins in Miami have offered to support him and are willing to sign a bond and act as third-party custodians.

In 2015, Ho enrolled in medical school at Antigua Medical School. After one semester, however, he decided to withdraw because he was not ready to fully commit. He spent the next three years working and was later accepted to Saint Matthews University School of Medicine in the Cayman Islands. In April 2025, he transferred to Xavier University School of Medicine in Aruba where he completed the remainder of his coursework. He has received notification that he is eligible to sit for the school's exit exam in February and if he passes, he will be able to sit for the medical licensing exam. Even during his pretrial detention, he remains focused on education and personal development having completed more than 100 certificates through various educational and self-enrichment programs offered at the detention facility. Defendant argues that his educational history, even in detention, demonstrates a person who values structure, learning and professional development.

Defendant argues that he is stable and does not pose a flight risk. He is deeply connected to his community through his church and close circle of friends. He has strong family ties in Florida, including his wife, brother, uncle, and cousins. His marriage, his friendships, his church community and his long-standing routines are rooted in Tampa. He argues that these community ties, along with his secure, permanent home in Tampa Palms, belie the claim that he is a flight risk.

Ho has lived for nearly eight years with psoriasis and psoriatic arthritis, a chronic inflammatory condition that affects both his skin and joints. To control his condition and prevent long-term damage, he receives a monthly biologic injection which must be administered every 28 days to remain effective. Since his detention, he has not received his injection despite his requests. He is already experiencing the signs of flare-up.

Defendant has no significant prior criminal history. His only interaction with the law has been minor traffic-related matters. As for his arrest for driving on a suspended license, he asserts he did not realize it had been suspended. Several years ago, he was stopped for speeding in Georgia and he was taken to jail for driving on a suspended license. He previously had been stopped for having no vehicle registration. A capias was issued after he inadvertently did not appear for a hearing. He did not know his license had been suspended because it expired when he was attending medical school in Antigua. He resolved the case by paying a fine. He has received a few speeding tickets over the years but paid the fines for each. He represents that he is current on his driver's license and vehicle registration.

As for his British passport that agents discovered when searching his house, Ho explains that his failure to mention it was inadvertent. He claims that he has not used the British passport in nearly a decade. He used it when he was a student, and simply forgot he still had it. According to his motion, Ho's travel in recent years has been

9

exclusively on his U.S. passport or previously on his Hong Kong passport, which is now expired.

In support of his release, Defendant argues that his history and characteristics demonstrate he will not be a flight risk. He further asserts that he poses no danger to the community and that the alleged crime is not a crime of violence. Finally, he argues that the Court can fashion conditions of release that would ensure his attendance at future court hearings and ensure the safety of the community upon his release, including restricting his ability to use a computer. Defendant contends that imposing a secured bond, home detention and monitoring, surrender of all passports (which are already in the Government's possession), Fourth Amendment waiver, third party custodian, and any other condition the Court finds warranted would reasonably assure Defendant's appearance in court and the safety of the community.

Defendant filed records and character letters in support of his requested release. Doc. 63. The medical records document his psoriasis and other medical conditions. Doc. 63-1. The character letter is signed by many members of his Christian church community offering their support if he is released. Doc. 63-2. The Certificates of Achievement are offered to show Ho's commitment to learning and professional development. Doc. 63-3.

### D. Government's Response in Opposition (Doc. 61)

The Government argues that Defendant's motion should be denied. Although the magistrate judge's ruling focused on the issue of Defendant being a flight risk, the Government argues that the dangerousness inherent in violations of the Export Control Reform Act should also be taken into consideration.

The Government contends that Defendant continued to engage in his conspiracy even when he knew he was being watched by the authorities as early as February 2025 when federal agents conducted an interview of Defendant in his Tampa home. Defendant claimed he was only shipping "computer parts" and concealed that the ultimate destination of the goods was China. In May 2025, he received an email from an exporter warning that his activity was being monitored by the FBI (Doc. 61-1), but that still did not deter him.

The Government recounted Defendant's relationship with co-defendant Li who flew to Tampa to register Janford Realtor LLC in March 2023. The Government recited text messages between Ho and co-defendant Li and between Ho and co-defendant Raymond about how they would export the NVIDIA[4] products to China. There are emails in which Defendant believes the Government was not aware of the

---

[4] NVIDIA is a United States technology company that designs and sells hardware and software products centered around accelerated computing, artificial intelligence, and GPUs.

scope of his conduct and the fact that the GPUs made it to China. The Government argues that it was clear that Defendant knew the GPUs were to be illegally exported to China and supplied to companies with direct links to the Chinese Communist Party, and he knew the U.S. ban on exportation of these devices was due to security threats China posed. The Government submits that the applicable guidelines calculations would result in a sentence of somewhere between 168 to 262 months.

Defendant was receiving bi-monthly payments not disclosed to pretrial services. As for the British Passport, Defendant used it recently when he went on a cruise. The Government further points out that when Ho did not appear for his court appearance for the 2016 traffic citation, he had already overstayed his F1 student visa which could have resulted in his being deported.  Finally, the Government submits a note (Doc. 61-2) that Defendant passed to a co-defendant in jail reflecting an attempt to coordinate testimony—another disrespect of the U.S. legal system.

**E. Hearing on December 18, 2025**

This Court held a hearing on Defendant's motion on December 18, 2025. Defendant Ho was present, with his counsel. Also present in the courtroom were Defendant's wife and other family members. Both defense counsel and the Government's counsel agreed that the facts as found by the magistrate judge were not in dispute. Instead, the parties disagree as to the interpretation and import of the facts.

Neither side requested an evidentiary hearing nor felt that one was necessary. Moreover, counsel were not expecting an evidentiary hearing.

Defense counsel did not contest the underlying facts, but he expressed that the magistrate judge did not have a complete understanding of who Ho is. Counsel explained that Ho is a highly educated individual who is about to sit for his medical school exit exam which he is hoping he still will be able to do. For that reason, counsel argued that Ho is not a flight risk.

As for the "danger to the community" factor, defense counsel argued the charged offense was not a violent crime, Ho has no criminal history, and he has no history of violence. Thus, counsel argued Ho poses no danger to the community.

Regarding his British passport, Ho does not dispute he has one, but he forgot he had it and does not recall using it on the cruise. Ho thought the passport was expired. Counsel explained that getting a new one is not as easy as the Government represents because Ho's passport was a British National (Overseas) passport issued before 1997.

As for the missed court in Georgia which resulted in his arrest, Ho was out of the country attending medical school when he missed his court date. Counsel argues there is no great weight to be given to his failure to appear in court because he did not know about it and it was due to a traffic violation that was quickly resolved once he became aware.

Ho argues that any concerns of his being a flight risk can be addressed by imposing strict pretrial requirements. He states his brother is willing to be a third-party custodian. His parents will sign over the Tampa Palms house as collateral. His wife will use a flip phone, and they will get a landline phone for the home. Ho's internet access can be completely restricted, and he will give up having a cell phone. Defense counsel argues the Court would be able to fashion terms of release that will ensure Ho's appearance at trial without the need for detention.

In response, the Government argues that Defendant is a "sociopath" in that he can attend church and be active in his church community on the one hand while violating national security on the other. The Government urges this Court to uphold the magistrate judge's detention order and argues the additional facts presented by the parties in their filings and at the hearing further support the magistrate judge's conclusion that Defendant should remain detained. The Government first argues that the weight of the evidence, including the Defendant's own text messages, overwhelmingly weigh in favor of detention. Second, the seriousness of the offense— Defendant's conduct compromised national security—supports detention. Defendant and his co-defendant texted in English in great detail about how they were going to violate the law, despite knowing that there were bans in place precluding the GPUs from being exported to China.

The Government's counsel argues that Defendant will lie to anyone to further his plan. When he met with FBI agents in February 2025, he lied about the fact that he was only shipping "computer parts." He lied about where the shipments were going, and he lied about the value of the shipments. Of note, when the FBI met Ho in his home, there were security cameras inside the home in every corner of every room and there were shipping boxes everywhere. Ho's purported explanation for the shipping boxes was that he used them to ship shoes that he sold on Ebay.

The Government argues that Ho is bound and determined to violate this law and that no conditions imposed on his release will prevent him from continuing his illegal activity. He lied about the first shipment. He lied about the British passport.[5] He lied about having only one cell phone. Even after being arrested, he passed a note to a co-defendant in jail about matching up their statements. *See* Doc. 61-2.

Regarding Defendant's failure to appear in court, the Government pointed out that, at that time, Ho's student visa had expired and he would have been subject to deportation.

---

[5] According to the Government, the British passport was how Ho came to the United States initially, and it does not expire until 2029. Further, the Government contends that there is nothing precluding Ho from applying online to get it renewed or replaced.

15

The Government submits that Ho is facing 15 to 18 years of incarceration. Thus, the Government argues he does have an incentive to flee, and no reasonable conditions will ensure he does not.

## II.    LEGAL STANDARD

Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." In that event, "the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." *U.S. v. King*, 849 F.2d 485, 490 (11th Cir. 1988). This "independent review" is de novo. *See United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

"At this point, the district court has two options." *King*, 849 F.2d at 490. "First, based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct." *Id.* "The court may then explicitly adopt the magistrate's pretrial detention order. Adoption of the order obviates the need for the district court to prepare its own written findings of fact and statement of reasons supporting pretrial detention." *Id.*

Where factual issues remain to be resolved, however, "the district court is to enter its own findings of fact." *Id.* But "when a motion to revoke or amend a pretrial

16

detention order attacks only the magistrate's legal conclusion that pretrial detention is necessary, and no factual issues remain unresolved, the district court need not enter findings of fact when adopting the magistrate's pretrial detention order." *Id.*

The second option allows the Court to acquire more evidence to make its detention determination. "If the district court, after reviewing the detainee's motion, determines that additional evidence is necessary or that factual issues remain unresolved, the court may conduct an evidentiary hearing for these purposes." *Id.* "In this instance, the district court must enter written factual findings and written reasons supporting its decision." *Id.*

"Of course, if the district court concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order." *Id.* at 490–91.

The Bail Reform Act lists multiple factors for a court to consider when making a detention determination:

> (1) the nature and circumstances of the offense charged, . . .
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, . . .
> 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). If, after a hearing, a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial. *Id.* § 3142(e).

## III.  DISCUSSION

Defendant moves for an order reversing the magistrate judge's order of detention and requests he be released pending trial. As a preliminary matter, the Court finds an evidentiary hearing is not necessary. The parties agree that the facts are undisputed and neither side has requested an evidentiary hearing. *See, e.g., In United States v. Govoni,* No. 8:25-cr-299-VMC-NHA, 2025 WL 1997709, at *6 (M.D. Fla. July 18, 2025) (finding an evidentiary hearing was not required where Defendant had "not presented additional evidence for the Court to consider or asserted that there are factual disputes this Court must resolve at an evidentiary hearing").

### A. Adoption of Magistrate Judge's Order of Detention

The magistrate judge concluded that Defendant was a serious flight risk and that no condition or combination of conditions of release would reasonably assure the Defendant's appearance as required. Doc. 25. The factual findings by the magistrate judge support the conclusion that Defendant is a flight risk. The magistrate judge found that the weight of the evidence against Defendant is strong. As discussed at the detention hearing, Defendant took active steps to conceal his illegal activity, including the formation of a fake realty company as a front to facilitate the illegal export of GPUs to China through intermediary countries like Thailand and Malaysia knowing the products would ultimately end up in China. The items being shipped to China are prohibited from being exported because of the national security

18

threat associated with China having this technology. Defendant received more than $3.8 million wired directly from China. The Court agrees that all these factors support detention. The Court further agrees with the magistrate judge that the fact Ho is facing a lengthy period of incarceration if convicted supports a finding that he has an incentive to flee. Similarly, the magistrate judge's conclusion that Defendant is a flight risk is supported by the findings that Ho could avoid deportation if he fled to China and that he has significant family ties in China.

While the parties presented additional facts for the Court's consideration at the December 18, 2025 hearing and in their filings (which the Court addresses below), the facts are not in dispute and the additional information does not affect the validity of the magistrate judge's findings and conclusions. Because the Court finds that the magistrate judge's factual findings are supported and that the magistrate judge's legal conclusions are correct, the Court adopts Magistrate Judge Sansone's detention Order and will deny Defendant's motion.

**B. Additional Information Presented to the District Court**

When making a detention determination, courts shall consider the nature of the offense charged. *See* 18 U.S.C. § 3142(g)(1). The Government argues that Ho's offenses are serious and a threat to national security. In its response to Defendant's motion, the Government provided detailed text messages sent by Ho evidencing that Ho knew it was illegal to export the GPUs to China because of security threats China posed to the

19

United States. *See* Doc. 61 at 5, 7, 12. Ho concealed any involvement of China or that the products were ultimately destined for China. Ho doctored export forms. *Id.* at 11-12. As the Government points out, the text messages are all in English and thus there could be no confusion as to Defendants' knowledge that the products were banned from being exported to China and Defendants' intent to illegally export them. And even when Ho was questioned about this by the FBI, he purportedly lied to agents about his activities and continued to engage in this illegal conduct.

While defense counsel argued at the hearing that neither Defendant nor the charged crimes were violent in nature, he acknowledged that the term "dangerousness," as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly understood in everyday vernacular. The Eleventh Circuit, citing the Report of the Senate Committee on the Judiciary, expounded on the broader interpretation of this term:

> The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.' The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. This principle was recently endorsed in *United States v. Provenzano and Andretta* [605 F.2d 85 (3rd Cir.1979)], in which it was held that the concept of 'danger' as used in current 18 U.S.C. [§]

20

> 3148 extended to non-physical harms such as corrupting a
> union.

*King*, 849 F.2d at 487 n.2 (citing Report of the Senate Committee on the Judiciary, S.Rep. No. 98–225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195–96). At the hearing and in its response, the Government did not vigorously argue that Defendant is a danger to the community, a factor that must be established by clear and convincing evidence. The Court need not reach this issue, however, because a "finding of either danger to the community *or* risk of flight will be sufficient to detain the defendant pending trial." *King*, 849 F.2d at 488 (quoting *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)) (internal quotation marks omitted) (emphasis added).

Regarding Defendant's failure to disclose his British passport, he explained in his motion that he simply forgot about his British passport because he has not used it in over a decade. In response, the Government pointed out that Ho used it recently on a cruise. At the December 18, 2025 hearing, Defendant did not deny using it recently, but he indicated he does not recall using it. The previously undisclosed British passport supports a finding that Defendant is a flight risk and Defendant's "explanation" does not alter that fact.

Regarding Defendant's lack of stable employment, defense counsel confirmed at the recent hearing that Ho has been a student most of his adult life. While his motion represents that he would be willing to work as an interpreter again, Ho is most

21

interested in preparing for and taking medical licensing exams.  In its response, the Government notes that Defendant's source of finances have been less than transparent. Doc. 61 at 15. Defendant receives bi-monthly payments that were not disclosed to pre-trial services. In addition, the interior of his home is covered in cameras and had a large number of FedEx shipping boxes which Ho claimed were used for selling shoes on EBay, another source of income not previously disclosed. A lack of stable employment, coupled with questionable sources of income that could provide him with the resources needed to flee, further support the finding that Ho is a flight risk and has little to no incentive to stay.

At the hearing before this Court, Defendant did not deny that he previously failed to appear for court, but he instead sought to explain the failure. He asserts he was out of the country in medical school and did not know he was required to be in court. The Government responds that, at that time, Ho's student visa had expired, and he would have been subject to deportation had he appeared in court. Thus, the Government argues this fact undermines Ho's claim that his failure to appear in court was wholly unintentional.

Ho has filed medical records in support of his alleged need for medical treatment for his psoriasis (Doc. 63-1), which he asserts he is not getting in jail. While the Court is sympathetic to Defendant's medical condition, detention facilities have medical

resources available. And the fact that Ho has this medical condition does not speak to whether he poses a flight risk if released.

In support of his motion, Ho filed a letter of support from his fellow church members. Doc. 3-2. The Government argues that his contradictory conduct of lying to federal agents and engaging in conduct that threatens national security is not overcome by his apparent commitment to his religion. To the contrary, the Government argues it evidences Defendant's sociopathic nature. While Ho may have the encouragement of his church community to maintain a stable church life, their support does not outweigh the fact that Ho's parents, who have in the past provided Defendant with financial support, reside in China. This reason supports Defendant's detention due to the potential for flight.

Defendant argues that there are alternatives to detention that would assure his future appearances in court. The Court acknowledges Defendant's argument that he has the support of family and his community, that he lacks significant prior criminal history, and that he does not have a violent nature. But the Court disagrees that these facts outweigh the factors which support Defendant's risk of flight. As set forth in greater detail above, based on Ho's conduct, his text messages, his lack of candor, the weight of the evidence against him, his British passport, his family ties outside the United States, his prior failure to appear for court, the potential lengthy incarceration he faces if convicted, the serious nature of the offenses charged, the security threat

23

posed by shipping this technology to China, and the lack of extradition if he flees to China, the Court finds that there is no condition or combination of conditions that would reasonably assure Defendant's appearance. Considering all the factors and upon this Court's independent review, the Court agrees with the Magistrate Judge that Ho is a flight risk and detention is necessary to assure Defendant Ho's appearance as required. The Court adopts the Magistrate Judge's pretrial detention order. Doc. 25. Defendant's motion is due to be denied. Accordingly, it is

**ORDERED**:

1.      Upon de novo review of the record, the Court adopts the Magistrate Judge's pretrial detention order (Doc. 25).

2.      Defendant Hon Ning Ho's Motion for District Court Review of the Magistrate Judge's Detention Order and Request for Pretrial Release (Doc. 42) is **DENIED**.

3.      Defendant shall remain in custody until further order of the Court.

**DONE AND ORDERED** in Tampa, Florida on December 30, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any